# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| Lauren Davis, *on behalf of herself and others similarly situated*, | Civil Action No.: |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| D.R. Horton Inc. | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Blake A. Bennett (#5133)
Cooch & Taylor P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801
bbennett@coochtaylor.com
(302) 984-3889

Aaron D. Radbil (*pro hac vice* application to be filed)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

Date: September 10, 2019

## Nature of this Action

1.      Lauren Davis ("Plaintiff") brings this class action lawsuit against D.R. Horton Inc. ("Defendant") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.      Upon information and good faith belief, Defendant routinely and systematically violates 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system to deliver non-emergency advertisement and marketing text messages to telephone numbers assigned to a cellular telephone service without prior express written consent, as is required by the TCPA.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction under 47 U.S.C. §§ 227(b)(3) and 28 U.S.C. § 1331.

4.      Venue is proper before this Court under to 28 U.S.C. § 1391(b) as Defendant is incorporated in this district. *See, e.g.*, *Godo Kaisha IP Bridge 1 v. Omnivision Techs., Inc.*, 246 F. Supp. 3d 1001, 1003 (D. Del. 2017) ("A defendant's place of incorporation is always an appropriate forum in which to sue that defendant.").

## Parties

5.      Plaintiff is a natural person who at all relevant times resided in Dallas, Texas.

6.      Defendant is a home construction company incorporated in Delaware and headquartered in Arlington, Texas.

## Factual Allegations

7.      Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(214) 471-XXXX.

1

8. On August 6, 2019, Plaintiff received the following text messages from Defendant on her cellular telephone:



9. On August 20, 2019, Plaintiff received the following text messages from Defendant on her cellular telephone:



10. On August 28, 2019, Plaintiff received the following text messages from Defendant on her cellular telephone:



11. The short code that Defendant used to send the text messages at issue to Plaintiff—797-979—is a dedicated, vanity short code, owned by CallFire, Inc. ("CallFire").

12. "A short code is a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising. Companies use these codes to bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."[1]

---

[1] https://usshortcodes.com/faqs (last visited September 9, 2019)

4

13. "A dedicated short code is an SMS short code that is used and paid for exclusively by one brand. A dedicated short code is different from a shared short code, because a shared short code is used and paid for by multiple brands."[2]

14. "A vanity short code, is a 5-6 digit phone number that is specifically selected by a brand, rather than selected at random by the Common Short Code Administration (CSCA)."[3]

15. CallFire is a is technology services company based in Santa Monica, California.

16. CallFire "designs, develops, and implements various hosted telephony software as a service."[4]

17. CallFire "provides a variety of cloud communication services, including tracked local and International phone and text messaging campaigns, voice broadcasting, power dialing, and Interactive Voice."[5]

18. CallFire "provides the most powerful and versatile SMS text messaging platform on the market. Whether you want to send out promotions, discounts, updates or notifications—text marketing lets you reach thousands instantly."[6]

19. CallFire's "platform is scalable to hundreds of thousands of messages."[7]

---

[2] https://usshortcodedirectory.com/faq/what-is-a-dedicated-short-code/ (last visited September 9, 2019).

[3] https://usshortcodedirectory.com/faq/what-is-a-vanity-short-code/ (last visited September 9, 2019).

[4] https://cleverleverage.com/callfire-features/ (last visited August 29, 2019).

[5] *Id.*

[6] https://www.callfire.com/products/text-messaging (last visited August 29, 2019).

[7] *Id.*

20. Plaintiff did not give Defendant prior express written consent to send text messages to her cellular telephone number by using an automatic telephone dialing system.

21. Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—as well as CallFire's public statements regarding its users' ability to send thousands of messages instantly, the advertisement and marketing text messages at issue were sent by using an automatic telephone dialing system.

22. Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—as well as CallFire's public statements regarding its users' ability to send thousands of messages instantly, the advertisement and marketing text messages at issue were sent by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

23. The text messages at issue were sent for non-emergency purposes.

24. Upon information and good faith belief, the text messages at issue were sent voluntarily.

25. Upon information and good faith belief, Defendant had knowledge that an automatic telephone dialing system was used to send the text messages at issue.

26. The purpose of the text messages at issue was to advertise and to market Defendant's business.

27. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

28. Upon information and good faith belief, Defendant uses an automatic telephone dialing system to send text messages, absent prior express written consent, to telephone numbers assigned to a cellular telephone service.

**Class Action Allegations**

29. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom D.R. Horton, Inc. delivered, or caused to be delivered, an advertisement or telemarketing text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification.

30. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

31. Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

32. The exact number of the members of the class is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

33. The members of the class are ascertainable because the class is defined by reference to objective criteria.

34. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendant, and by third parties.

35. Plaintiff's claims are typical of the claims of the members of the class.

36. As it did for all members of the class, Defendant used an automatic telephone dialing system deliver text messages to Plaintiff's cellular telephone number.

37. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice, and procedure on the part of Defendant.

38. Plaintiff's claims are based on the same theories as are the claims of the members of the class.

39. Plaintiff suffered the same injuries as the members of the class.

40. Plaintiff will fairly and adequately protect the interests of the members of the class.

41. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

42. Plaintiff will vigorously pursue the claims of the members of the class.

43. Plaintiff has retained counsel experienced and competent in class action litigation.

44. Plaintiff's counsel will vigorously pursue this matter.

45. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

46. The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

47. Issues of law and fact common to all members of the class are:

   a. Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

   b. Defendant's use of an automatic telephone dialing system as defined by the TCPA;

   c. Defendant's violations of the TCPA; and

    d.  The availability of statutory penalties.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

49.    If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

50.    The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

51.    The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

52.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

53.    The damages suffered by each individual member of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

54.    The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

55.    There will be no extraordinary difficulty in the management of this action as a class action.

56.    Defendant acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

## Count I
## Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

57.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-56.

58.     A text message is a "call" as defined by the TCPA. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Arredondo v. Flexi Corp.*, No. 5:17-CV-4, 2017 WL 7796192, at *1 (S.D. Tex. Aug. 18, 2017) ("Making a call using an automatic telephone dialing system triggers responsibility under the TCPA regardless of whether the recipient answers. . . . A text message to a cellular telephone qualifies as a 'call' for such purposes.").

59.     47 U.S.C. § 227(b)(1)(A)(iii) makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ."

60.     47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

61.     47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or

10

cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

62. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an automatic telephone dialing system to send advertisement and telemarketing text messages to Plaintiff's cellular telephone number, and the cellular telephone numbers of proposed class members, without prior express written consent.

63. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing its violative behavior, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B);

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3)(C);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: September 10, 2019

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
Cooch & Taylor P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801
bbennett@coochtaylor.com
(302) 984-3889

Aaron D. Radbil (*pro hac vice* application to be filed)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*