# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAUREN DAVIS, *on behalf of herself and all others similarly situated*, | ) ) ) | Case No. 1:19-cv-01686-LPS |
| Plaintiff, | ) ) | |
| v. | ) ) | OPPOSITION TO DEFENDANT D.R. HORTON, INC.'S OPENING BRIEF IN |
| D.R. HORTON, INC., | ) ) | SUPPORT OF ITS 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT |
| Defendant. | ) | |

Blake A. Bennett (#5133)
Cooch & Taylor P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801
bbennett@coochtaylor.com
Phone: (302) 984-3889

Aaron D. Radbil (*pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
aradbil@gdrlawfirm.com
Phone: (512) 803-1578

*Counsel for Plaintiff and the proposed class*

## Table of Contents

Nature and Stage of Proceedings ................................................................................ 1

Introduction and Summary of Argument ..................................................................... 1

Summary of Factual Allegations ................................................................................. 5

Legal Standard ............................................................................................................ 5

Argument .................................................................................................................... 6

   I.    Defendant's introduction of extrinsic evidence is misguided, and its incompleteness highlights the premature nature of Defendant's motion to dismiss. .......................... 6

   II.   This Court should reject Defendant's motion to dismiss Plaintiff's TCPA claims. ........... 8

      A.    Plaintiff sufficiently alleges that Defendant used an ATDS to place text messages to her cellular telephone number. ............................................................................ 9

      B.    Contrary to Defendant's attempt to muddy the waters, Plaintiff need not detail the inner workings of Defendant's text messaging system at the pleading stage. ..................... 11

         1.    It is all-but-impossible for TCPA plaintiffs to meet the pleading requirement Defendant proposes. ...................................................................................... 12

         2.    *Dominguez* did not overturn the FCC's 2003 and 2008 Orders concerning the definition of ATDS, which include predictive dialers, so this Court should apply them here. ........................................................................................................ 14

         3.    Defendant's cited CallFire-related cases are inapposite, and ascertaining their relevance is impossible at this early stage. .................................................... 17

Conclusion ............................................................................................................... 20

i

## Table of Authorities

**Cases**

*Abella v. Student Aid Ctr., Inc.*, No. CV 15-3067, 2015 WL 6599747 (E.D. Pa. Oct. 30, 2015) ........................................................................................................................ 1

*ACA Int'l v. Fed. Commc'ns Comm'n,* 885 F.3d 687 (D.C. Cir. 2018) ........................ 2, 3, 14, 15

*Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578 (M.D. Tenn. 2018) ........................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 6

*Blow v. Bijora, Inc.*, 855 F.3d 793 (7th Cir. 2017) ..................................................... 16

*Brailey v. F.H. Cann & Assocs., Inc.*, No. CIV. 6:14-0754, 2014 WL 7639909 (W.D. La. Dec. 5, 2014) ............................................................................................................. 13

*Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356 (E.D. Pa. 2017) ................. 8

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .................................... 12

*Buslepp v. B&B Entertainment, LLC*, 2012 WL 1571410 (S.D. Fla. May 3, 2012) ................... 11

*Carrera v. Major Energy Servs., LLC*, No. CV153208MASLHG, 2016 WL 7183045 (D.N.J. Mar. 29, 2016) ..................................................................................... 2, 11

*Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100 (S.D. Cal. 2014) ........................ 4, 9

*Curry v. Synchrony Bank, N.A.*, No. 1:15CV322-LG-RHW, 2015 WL 7015311 (S.D. Miss. Nov. 12, 2015) ........................................................................................................ 13

*DeCapua v. Metro. Prop. & Cas. Ins. Co.*, No. 18-00590-WES, 2019 U.S. Dist. LEXIS 168061 (D.R.I. Sept. 30, 2019) ................................................................... 4, 20

*De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605 (S.D. Fla. June 30, 2014) .............. 10

*Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756 (W.D. Pa. Sept. 2, 2016) ... 11

*Dominguez v. Yahoo, Inc.*, 629 F. App'x 369 (3d Cir. 2015) ..................................... 15

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) ..................................... passim

*Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476 (E.D.N.Y. 2019) ....................... passim

*Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549 (S.D. Fla. Oct. 23, 2018) .............................................................................................................. 10

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ..................................... 8

*Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963 (E.D. Mo. 2018) ........................................... 10

*Hashw v. Department Stores Nat. Bank*, 986 F. Supp. 2d 1058 (D. Minn. 2013) ....................... 10

*Hawk Valley, Inc. v. Taylor*, No. 10-CV-00804, 2012 WL 1079965 (E.D. Pa. Mar. 30, 2012) .... 6

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................................... 6

*In re Jiffy Lube Intern., Inc.*, *Text Spam Litig.*, 847 F. Supp. 2d 1253 (C.D. Cal. 2012)............. 11

*Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324 (S.D.N.Y. 2019) .................................. 16

*Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012).............. 13

*Kauffman v. CallFire, Inc.*, No. 3:14-CV-1333-H-DHB, 2014 WL 12160755 (S.D. Cal. Dec. 5, 2014)................................................................................................................................ 10

*Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142-MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010)............................................................................................................................. 10

*Kelly v. Wells Fargo Bank, N.A.*, No. 1:13-CV-2298, 2014 WL 3394737 (M.D. Pa. July 10, 2014) ........................................................................................................................................... 6

*Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 5324291 (N.D. Cal. Oct. 17, 2014).......... 10

*Maddox v. CBE Group, Inc.*, No. 1:17-CV-1909-SCJ, 2018 WL 2327037 (N.D. Ga. May 22, 2018) ..................................................................................................................................... 16

*Maes v. Charter Commc'n*, 345 F. Supp. 3d 1064 (W.D. Wis. 2018)......................................... 16

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)................................... 14, 16, 18

*Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019)........................................................................................................................ 4, 9

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ................................ 16

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997) ................................................. 12

*Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262 (S.D. Fla. 2018) ........... passim

*Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308 (S.D. Fla. 2018) ...................................... 16

*Reyes v. Saxon Mortg. Services, Inc.*, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009).................... 11

*Rivero v. D'Jais, LLC*, No. CV1812697FLWZNQ, 2019 WL 4784175 (D.N.J. Sept. 30, 2019) ............................................................................................................ 1, 3, 15, 19

*Robinson v. Midland Funding, LLC*, 2011 WL 1434919 (S.D. Cal. April 13, 2011) .................. 11

*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018) ........................... 10

*Sieleman v. Freedom Mortg. Corp.*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018) ................................................................................................................. 8, 16

*Sieleman v. Freedom Mortg. Corp.*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018) ...................................................................................................................... 8

*Somogyi v. Freedom Mortg. Corp.*, No. CV 17-6546 (JBS/JS), 2018 WL 3656158 (D.N.J. Aug. 2, 2018) ........................................................................................................................ 16

*Sparkle Hill, Inc. v. Invecor, LLC*, No. CIV. 13-4172 NLH/AMD, 2014 WL 4755490 (D.N.J. Sept. 23, 2014) ....................................................................................................... 6

*Swaney v. Regions Bank*, No. 2:13-cv-00544-JHE, 2018 WL 2316452 (N.D. Ala. May 22, 2018) ....................................................................................................................................... 16

*Torres v. Inteliquent, Inc.*, No. CV 17-10022, 2018 WL 5809246 (E.D. La. Nov. 6, 2018) .............................................................................................................................. 2, 11, 13

*Torres v. Nat'l Enter. Sys.*, 2012 WL 3245520 (N.D. Ill. Aug. 7, 2012) ............................... 11, 13

*Wilson v. Quest Diagnostics Inc.*, No. CV 2:18-11960, 2018 WL 6600096 (D.N.J. Dec. 17, 2018) ........................................................................................................................ 4, 16, 17

*Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484 (D.N.J. Nov. 29, 2018) ........................................................................................................................... 10

**Statutes**

28 U.S.C. § 2344 .......................................................................................................................... 15

47 U.S.C. § 227 ..................................................................................................................... passim

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. at 566, ¶ 12 (2008) ............................................................................................ 16

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. at 14092, ¶ 132 (2003) ............................................................................................................ 17, 19

## Nature and Stage of Proceedings

On September 10, 2019, Lauren Davis ("Plaintiff") filed a putative class action complaint against D.R. Horton Inc. ("Defendant"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). D.I. 1. Defendant later moved to dismiss Plaintiff's complaint under Rule 12(b)(6). D.I. 8-9.

## Introduction and Summary of Argument

1.      To properly state a claim under the TCPA, a plaintiff need only plausibly allege that the defendant placed a call, by using an automatic telephone dialing system ("ATDS"), to a cellular telephone number. *See Abella v. Student Aid Ctr., Inc.*, No. CV 15-3067, 2015 WL 6599747, at *2 (E.D. Pa. Oct. 30, 2015) (denying motion to dismiss text message-based TCPA claim). Plaintiff does precisely that. *See generally* D.I. 1 at ¶¶ 7-10, 21.

2.      Indeed, Plaintiff pleads, among all else, that Defendant sent repeated impersonal text messages, advertising a sale of Defendant's inventory, using a short-code associated with a telephony vendor—CallFire, Inc. ("CallFire")—that touts its ability to send hundreds of thousands of text messages at once. *See id.* at ¶¶ 11-19, 21-22.

3.      Significant, then, is that courts in this Circuit, and nationwide, have held that allegations either materially identical to—or even substantially less detailed than—Plaintiff's ATDS-related allegations are sufficient to withstand a motion to dismiss, given the practical limitations on requiring a TCPA plaintiff to understand the technical inner workings of a defendant's dialer, absent discovery. *See, e.g.*, *Rivero v. D'Jais, LLC*, No. CV1812697FLWZNQ, 2019 WL 4784175, at *6 (D.N.J. Sept. 30, 2019) ("Rivero has emphasized that he allegedly received text messages that promoted D'Jais and that these text messages were generic and impersonal, came from a "short code," and occasionally included hyperlinks to D'Jais's website.

1

. . . These factual allegations raise Rivero's claims to the level of plausibility, because it is plausible that a business that uses mass text messages to promote itself would use equipment that has the capacity to generate random or sequential numbers and text those numbers"); *Carrera v. Major Energy Servs., LLC*, No. CV153208MASLHG, 2016 WL 7183045, at *2 (D.N.J. Mar. 29, 2016) (alleging "a brief pause before a live operator got on the line and began talking" was sufficient to plausibly allege the use of an ATDS); *Torres v. Inteliquent, Inc.*, No. CV 17-10022, 2018 WL 5809246, at *4 (E.D. La. Nov. 6, 2018) ("It would be unreasonable, at this juncture, to hold Plaintiff to a higher standard because 'it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used' to justify a higher pleading standard").[1]

4.      Despite this minimal pleading standard, Defendant attempts to introduce extrinsic evidence from CallFire's website to establish the precise capabilities of one of CallFire's dialers, including its capacity to randomly or sequentially generate numbers, and the degree of human intervention necessary to operate it. Oddly, Defendant does this even though neither party has identified the specific CallFire dialer Defendant used to place the calls now in question. *Compare* D.I. 10 (introducing tech support pages from CallFire's website) *with* D.I. 1 at ¶¶ 11-19 (discussing Defendant's short-code being traceable to CallFire) *and* D.I. 9 at Argument § C.2 (discussing cases with analyses specific to one of CallFire's products, and imputing that analysis to these pleadings).

5.      Moreover, Defendant's recitation of the Third Circuit's decision in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) does not save its effort, as that decision merely incorporates the analysis of the DC Circuit's ruling in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir.

---

[1]      Unless otherwise indicated, all emphasis is added and all internal citations and references are omitted.

Mar. 16, 2018), which struck down the Federal Communications Commission's ("FCC") 2015 Order expanding its interpretation of the TCPA.

6.     Specifically, the *Dominguez* decision interpreted *ACA Int'l* as binding and held it would interpret the TCPA's "statutory definition of an autodialer as we did prior to the issuance of [the] 2015 [Order]." 894 F.3d at 119. Consequently important, the statutory definition— "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers," 47 U.S.C. § 227(a)(1)— was interpreted in *Dominguez* as requiring an analysis into whether a device has the *present* capacity to function in the manner described, not "its latent or potential capacity." *Id.* Though Defendant contends that this decision compels dismissal of Plaintiff's claims, Defendant is mistaken. Nowhere in *Dominguez* did the Third Circuit indicate a desire to rewrite the pleading requirements of an ATDS to require a plaintiff to specifically allege—absent discovery—a detailed breakdown into how that dialer has the present capacity to randomly or sequentially generate telephone numbers, as opposed to a latent or potential capacity. And nowhere in that decision did the Third Circuit disturb the FCC's guidance on whether "a predictive dialer, i.e. a device that makes phone calls using a database of stored phone numbers without a human manually dialing each number, can qualify as ATDS, even if the device lacks the capacity to call randomly or sequentially generated numbers." *Rivero*, 2019 WL 4784175 at *5 n.6 (noting a split in authority and denying a motion to dismiss materially identical text-based allegations).[2] So, because *Dominguez* did not address the degree of human intervention required for a dialer to be classified as an ATDS, it did not foreclose the possibility that a dialer may be an ATDS if it has the present

---

[2]     "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Id.* at *3.

capacity to dial numbers without human intervention. *Wilson v. Quest Diagnostics Inc.*, No. CV 2:18-11960, 2018 WL 6600096, at *3 (D.N.J. Dec. 17, 2018).

7.      Lastly, Defendant's CallFire-related cases fail to support its position for numerous reasons. Both *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 492 (E.D.N.Y. 2019) and *Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1266 (S.D. Fla. 2018) were decided at the summary judgment stage, after the parties were able to investigate the functionality of the defendants' dialers. *DeCapua v. Metro. Prop. & Cas. Ins. Co*., on the other hand, is a magistrate judge's report and recommendation that has been objected to—so it has *not* been adopted by the district court in that case—and is based on dramatically different factual allegations than this case. No. 18-00590-WES, 2019 U.S. Dist. LEXIS 168061 (D.R.I. Sept. 30, 2019). Moreover, Defendant has not shown that these cases analyzed the same dialer, or the same functionality, as the dialer Defendant used to make the subject calls, but nevertheless asks the Court to improperly interpret the pleadings in its favor, rather than Plaintiff's. And, even engaging in the academic exercise of addressing these decisions—despite that Defendant fails to establish their relevance—they were wrongly decided, as evidenced by numerous other CallFire-related decisions that have denied motions to dismiss based on ATDS-related challenges. *See, e.g.*, *Metten v. Town Sports Int'l, LLC*, No. 18-CV-4226 (ALC), 2019 WL 1299939, at *3 (S.D.N.Y. Mar. 21, 2019) (finding plaintiff plausibly alleged CallFire text messages came from an ATDS); *see generally Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1102 (S.D. Cal. 2014) (denying motion to dismiss where "Legal Shield used CallFire to promote its business").

8.      In the end, this Court should reject Defendant's conclusory arguments, find that Plaintiff met her minimal pleading standards in alleging that Defendant used an ATDS to deliver text messages to her cellular telephone number, and deny Defendant's motion to dismiss.

### Summary of Factual Allegations

Plaintiff alleges that Defendant violated the TCPA by delivering at least nine text messages to Plaintiff's cellular telephone number, using an ATDS, for the purposes of advertising or telemarketing, absent prior express consent. *See generally* D.I. 1 at ¶¶ 8-10, 20.

More precisely, Defendant delivered three sets of three text messages to Plaintiff's cellular telephone number advertising a "Sale-A-Bration," in which Defendant advertised a sale of its housing inventory, with enhanced commissions for real estate agents, and provided contact information and a link to Defendant's available inventory for sale. *Id.* at ¶¶ 8-10. Defendant, however, failed to obtain Plaintiff's prior express written consent to send these automated text messages to her cellular telephone number, as the TCPA requires. *Id.* at ¶ 20.

Defendant's text messages came from a vanity short code owned by CallFire. *Id.* at ¶ 11. CallFire advertises that it is a "telephony software" company that "provides . . . text messaging campaigns" for clients, and advertises that it has "the most powerful and versatile SMS text messaging platform on the market. Whether you want to send out promotions, discounts, updates or notifications—text marketing lets you reach thousands instantly." *Id.* at ¶¶ 16-18. In fact, CallFire touts that it "is scalable to hundreds of thousands of messages." *Id.* at ¶ 19.

So based in part on the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—and in part on Defendant's use of a vendor that advertises its capability to deliver hundreds of thousands of text messages at once, Plaintiff asserts that Defendant used an ATDS to deliver the text messages now at bar. *Id.* at ¶¶ 21-22.

### Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Hawk Valley, Inc. v. Taylor*, No. 10-CV-00804, 2012 WL 1079965, at *3 (E.D. Pa. Mar. 30, 2012). "The defendant bears the burden of showing that no claim has been presented." *Sparkle Hill, Inc. v. Invecor, LLC*, No. CIV. 13-4172 NLH/AMD, 2014 WL 4755490, at *2 (D.N.J. Sept. 23, 2014).

**Argument**

I.   **Defendant's introduction of extrinsic evidence is misguided, and its incompleteness highlights the premature nature of Defendant's motion to dismiss.**

Through its declaration and related exhibits, D.I. 10, Defendant seeks to introduce evidence outside the four corners of Plaintiff's complaint in an effort to prove that it did not use an ATDS to repeatedly deliver text messages to Plaintiff.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a "document *integral to or explicitly relied* upon in the complaint" may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original). "What the rule seeks to prevent is the situation in which a 'plaintiff with a legally deficient claim that is based on a particular document' is able to avoid dismissal of that claim 'by failing to attach the relied upon document.'" *Kelly v. Wells Fargo Bank, N.A.*, No. 1:13-CV-2298, 2014 WL 3394737, at *2 n.1 (M.D. Pa. July 10, 2014).

Defendant's declaration—introducing several unrelated web pages from CallFire's website—stretches the bounds of this principle past its limit. Defendant contends that, by referencing CallFire's website in her complaint, Plaintiff either (1) explicitly relies on that website to maintain her claims, or (2) the CallFire website is integral to her complaint. Neither factor is satisfied here, given that Plaintiff's claims can be entirely maintained without any reference to the CallFire website, as the website simply provides *additional* evidence of Defendant's use of an ATDS on top of Plaintiff's already-sufficient allegations. *See infra* Argument § II.A. And, because Defendant's declaration and supporting exhibits deviate significantly from the materials cited by Plaintiff—CallFire's frequently asked tech support questions and other technical support pages—this Court should not consider them.

Regardless, the content of Defendant's extraneous declaration and its usage in Defendant's motion fatally undermine Defendant's request for relief. Specifically, after introducing this extraneous information, Defendant repeatedly argues in its motion that, because a few other decisions found that CallFire's EZ Texting platform is not an ATDS, *see infra* Argument § II.B.3, this Court should do the same. However, conspicuously absent from this argument is any evidence to support Defendant's underlying position: that it used the CallFire EZ Texting platform.

Indeed, Plaintiff does not allege it. And Defendant does not state that it is the case in its declaration. Rather, Defendant simply treats it as a conclusory fact, and embarks on its motion to dismiss as if it were so.

Given, therefore, that neither party identifies the precise dialer type at issue—or its nuanced technical capabilities[3]—there is no way to analyze either the relevance or propriety of Defendant's

---

[3]     *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("[C]ourts may need to investigate, on a case-by-case basis, how much is needed to activate a device's autodialing potential in order to determine whether it violates the TCPA.").

extrinsic materials, or any of the CallFire-specific cases Defendant cites.

Considering as much, this Court should focus on Plaintiff's allegations, and whether those allegations are sufficient to state a claim under the TCPA.

## II.    This Court should reject Defendant's motion to dismiss Plaintiff's TCPA claims.

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). The relevant portion of the TCPA provides that it is unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

*Id.*

"Text messages are 'calls' within the meaning of the TCPA." *Brown v. Rita's Water Ice Franchise Co. LLC*, 242 F. Supp. 3d 356, 362 (E.D. Pa. 2017). And prior express consent is "an affirmative defense" which the defendant bears the burden to establish. *Sieleman v. Freedom Mortg. Corp.*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159, at *5 (D.N.J. Aug. 2, 2018).

Further, the TCPA vests the FCC with the authority to "prescribe regulations to implement the requirements" of the Act. 47 U.S.C. § 227(b)(2). "Pursuant to that authority, the FCC has determined 'that it is essential to require prior express *written* consent for autodialed or prerecorded telemarketing calls to wireless numbers.'" *Sieleman*, 2018 WL 3656159, at *7 (D.N.J. Aug. 2, 2018) (emphasis in original).

Against this backdrop, Defendant seeks to dismiss Plaintiff's complaint solely because, it argues, Plaintiff fails to allege that Defendant used an ATDS to deliver its text messages to Plaintiff. For all the reasons described below, Defendant's argument falls flat.

8

**A. Plaintiff sufficiently alleges that Defendant used an ATDS to place text messages to her cellular telephone number.**

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; a (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Given this definition, Plaintiff alleges that Defendant placed at least three sets of three texts to her cellular telephone number by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." D.I. 1 at ¶¶ 21-22.

Plaintiff additionally alleges that Defendant used a vanity short code associated with CallFire, a telephony vendor that advertises its ability to deliver "text messaging campaigns," "scalable to hundreds of thousands of messages." *Id*. at ¶¶ 11-19. Lastly, Plaintiff alleges that the text messages Defendant delivered to her cellular telephone number were advertisements or telemarketing messages that were "standardized, impersonal, and consistent in structure and format," as opposed to individualized messages catered to Plaintiff. *Id.* at ¶ 21.

Based on these factual assertions, Plaintiff sufficiently alleges that Defendant used an ATDS to place text messages to her cellular telephone number. *See, e.g.*, *Metten*, 2019 WL 1299939, at *3 ("It very well may be the case that CallFire's messaging system does not have the required capabilities to constitute an ATDS. However, at the motion to dismiss stage, a Plaintiff need only make a showing that it is plausible that Defendants used an ATDS.").[4]

---

[4]     *See also Couser*, 994 F. Supp. 2d at 1102 (denying motion to dismiss where "Legal Shield used CallFire to promote its business, and Couser alleges that she received approximately 40 unsolicited promotional calls that were made with an automatic telephone dialing system *and* utilized an artificial or prerecorded voice.") (emphasis in original); *Kauffman v. CallFire, Inc.*, No.

And, more generally, where a plaintiff alleges—like here—that a defendant uses "a short code telephone number," "the sending of generic text messages," and "[the vendor's] advertising materials suggesting that it had previously delivered more than four billion mobile messages. . . [t]hese indicators of automation and mass marketing contribute to the plausibility of Plaintiff's allegations regarding Defendants' use of an ATDS." *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 476-77 (S.D.N.Y. 2018).

To be sure, "[f]ar less specific allegations regarding a TCPA defendant's use of an autodialer have survived similar motions to dismiss." *Id.* at 477; *see also Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 965 (E.D. Mo. 2018) ("Particularly given the repetitive, generic, and impersonal nature of the messages, it is plausible that Farmers used an ATDS."); *Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484, at *3 (D.N.J. Nov. 29, 2018) (finding presence of short code significant in analyzing ATDS issue); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (holding allegations of ATDS sufficient where the content of the messages were advertisements scripted "in an impersonal manner").[5]

---

3:14-CV-1333-H-DHB, 2014 WL 12160755, at *4 (S.D. Cal. Dec. 5, 2014) (denying motion to dismiss TCPA claims against CallFire); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 5324291, at *3 (N.D. Cal. Oct. 17, 2014) (same); *see generally Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549, at *1 (S.D. Fla. Oct. 23, 2018) (denying Rule 12(b)(1) motion to dismiss involving allegations that Defendant used "a 'short code' provided by Callfire, Inc., that enables Defendant to send SMS text messages *en masse* without human intervention.") (class certified for settlement purposes, 2019 WL 1301746, (S.D. Fla. Feb. 20, 2019)).

[5]     The pleading requirements for alleging that a defendant used an ATDS are not onerous. *See, e.g.*, *De Los Santos v. Millward Brown, Inc.*, 2014 WL 2938605, at *3 (S.D. Fla. June 30, 2014) ("To state a claim under the TCPA, Plaintiff need only allege that Defendant used an autodialer."); *Hashw v. Department Stores Nat. Bank*, 986 F. Supp. 2d 1058, 1061 (D. Minn. 2013) ("Here, Hashw has pleaded that an ATDS was used to make the calls to his cellular phone. As the Court must accept that allegation as true at this juncture, nothing more is required to state a claim

Put simply, "little is required to properly allege a violation of the TCPA." *Torres*, 2018 WL 5809246, at *4. What's more, where "Plaintiff provides some facts to complement his allegation that an ATDS was used, the allegations . . . allow the court to infer that an ATDS was used." *Id.*; *compare Despot v. Allied Interstate, Inc.*, No. CV 15-15, 2016 WL 4593756, at *5 (W.D. Pa. Sept. 2, 2016) ("Plaintiff's allegations merely parrot the language of 47 U.S.C. § 227(a)(1)(A)(iii) and state that he received thirteen 'unlawful' calls. Without more, such conclusory allegations fail to plead sufficient facts to support a plausible TCPA claim against Allied Interstate.") *with Carrera*, 2016 WL 7183045, at *2 (alleging "a brief pause before a live operator got on the line and began talking" was sufficient to plausibly allege the use of an ATDS). Here, Plaintiff does just that, comfortably exceeds the minimum standard required of her, and sufficiently alleges that Defendant used an ATDS to place text messages to her cellular telephone number.

### B.  Contrary to Defendant's attempt to muddy the waters, Plaintiff need not detail the inner workings of Defendant's text messaging system at the pleading stage.

In the face of Plaintiff's more-than-sufficient allegations regarding Defendant's use of an

---

for relief under the TCPA."); *In re Jiffy Lube Intern., Inc.*, *Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (C.D. Cal. 2012) (finding that an allegation that the defendant used an ATDS is sufficient at the pleading stage); *Torres v. Nat'l Enter. Sys.*, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) ("Torres' allegations indicate that an 'automatic telephone dialing system or an artificial or prerecorded voice' was used by NES, which is sufficient at this juncture."); *Buslepp v. B&B Entertainment, LLC*, 2012 WL 1571410, at *1 (S.D. Fla. May 3, 2012) (denying a motion to dismiss because "the allegation that Defendant used [an autodialer] . . . is a factual allegation under *Twombly* and *Iqbal*."); *Robinson v. Midland Funding, LLC*, 2011 WL 1434919, at *3 (S.D. Cal. April 13, 2011) ("although Plaintiff's allegation that Defendant made calls to his 'cellular telephone' via an 'automatic telephone dialing system' . . . using 'an artificial or prerecorded voice for which he was charged' seem vague, neither (TCPA) section 227(b)(1)(A)(iii) nor Federal Rule of Civil Procedure 8 requires Plaintiff to plead his claim with particularity"); *Reyes v. Saxon Mortg. Services, Inc.*, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009) (holding that an allegation that a defendant "frequently made calls to Plaintiff's cell phone using an automatic telephone dialing system (including an automated dialing machine, dialer, and auto-dialer) and an artificial or prerecorded voice" is sufficient to plead a TCPA claim).

ATDS, Defendant attempts to move the goalposts. Citing to authority where the plaintiffs did little more than plead the elements of a claim, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011), or make "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), Defendant first suggests that Plaintiff's allegations are no different from these. However, as discussed *supra* Argument § II.A, Plaintiff articulates specific facts that support her allegation that Defendant used an ATDS to deliver text messages to her cellular telephone number. Then, Defendant contends that Plaintiff fails to allege that it used an ATDS because Plaintiff did not describe how Defendant's dialer uses "a random or sequential number generator." D.I. 9 at 9. But this argument fails for other reasons, as explained below.

### 1. It is all-but-impossible for TCPA plaintiffs to meet the pleading requirement Defendant proposes.

Defendant contends that "[t]he Complaint must be dismissed" because it "is entirely devoid of any *facts* that would show the CallFire texting platform used, or even had the capacity to store or produce telephone numbers using, a random or sequential number generator." *Id.* at 9-10 (emphasis in original). Applying this analysis to the actual facts at issue demonstrates its overreach and misunderstanding of the current procedural posture of this matter.

It bears repeating that Plaintiff initially bases her complaint on a series of allegations that can be succinctly summarized as Defendant sending repeated advertising or telemarketing text messages to her cellular telephone, absent prior express consent, in a manner indicating that Defendant uses an ATDS. As further support, Plaintiff asserts that the text messages in question appear to be associated with the telephony vendor, CallFire. CallFire, of course, advertises its capability of sending hundreds of thousands of text messages at once.

Plaintiff, however, is not a software engineer or an expert in telephony systems. Nor has Plaintiff been afforded an opportunity to conduct discovery into the manner in which Defendant's

alleged ATDS operates—including the degree of human intervention in its operation, and what aspects of the system operate automatically.

As well, Defendant has not even acknowledged that it used CallFire—let alone the specific EZ Texting program it describes in its motion—to contact Plaintiff. And Plaintiff has not deposed any fact witnesses employed by Defendant or CallFire with knowledge of how the dialer in question operates. Nor has Plaintiff had the opportunity to employ any expert witnesses to examine and opine on the operation of the dialer. She has, however, pleaded facts that support the factual allegations known—and knowable—to her.

Requiring more at the pleading stage would be unreasonable, given the limited information plaintiffs could realistically hope to obtain prior to discovery—a position that courts throughout the country repeatedly emphasize in analyzing TCPA actions. *See, e.g.*, *Torres*, 2018 WL 5809246, at *4 ("It would be unreasonable, at this juncture, to hold Plaintiff to a higher standard because 'it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used' to justify a higher pleading standard.").[6]

As summarized in a different *Torres* decision:

> Torres' allegations indicate that an 'automatic telephone dialing system or an artificial or prerecorded voice' was used by NES, which is sufficient at this juncture. Nor would it even be reasonable to hold plaintiffs in TCPA cases to the standard proposed by NES since it would be virtually impossible, absent discovery,

---

[6]     *See also Curry v. Synchrony Bank, N.A.*, No. 1:15CV322-LG-RHW, 2015 WL 7015311 (S.D. Miss. Nov. 12, 2015) ("plaintiffs cannot be expected to provide specific details about the type of dialing systems used to deliver the calls they receive" at the time a complaint is filed); *Brailey v. F.H. Cann & Assocs., Inc.*, No. CIV. 6:14-0754, 2014 WL 7639909 (W.D. La. Dec. 5, 2014) ("Brailey need not plead 'specific technical details' regarding Cann's use of an ATDS, but he must at least describe, in laymen's terms, the facts about the call or the circumstances surrounding the call that make it plausible that the call was made using an ATDS."); *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("We agree that it is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS, such as what type of machines were used to make a call or how those machines functioned.").

for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail. Under such a standard, defendants such as NES would be virtually immune to TCPA claims, which clearly is not what was intended by Congress in creating the TCPA. Thus, Torres has stated a valid TCPA claim, and the motion to dismiss the TCPA claim is denied.

2012 WL 3245520, at *3.

So, at bottom, Plaintiff is not required to plead specifically how Defendant's dialer operates in a random or sequential manner, given that such information is not required of her at the pleading stage, and that it is "virtually impossible, absent discovery, for any plaintiff to gather." *Id.* Correspondingly, this Court should deny Defendant's motion because it seeks to improperly impose a requirement that Plaintiff plead the inner workings and specific details of the dialer Defendant used to send the text messages that give rise to this matter.

> **2.  *Dominguez* did not overturn the FCC's 2003 and 2008 Orders concerning the definition of ATDS, which include predictive dialers, so this Court should apply them here.**

Underlying Defendant's erroneous argument that Plaintiff must plead specific facts regarding the technical operation of Defendant's dialer in her complaint is the Third Circuit's decision in *Dominguez*. However, Defendant misreads and misapplies that decision, and, in turn, fails to demonstrate how *Dominguez* warrants dismissal of Plaintiff's claims.

The *Dominguez* court held that, in light of the decision in *ACA Int'l*, "we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling," such that a dialer would no longer be considered an ATDS if it only "had the *latent* or *potential* capacity to function as autodialer." *Id.* Accordingly, the relevant analysis turned to whether the dialer in question "had the *present* capacity to function as autodialer." *Id.*[7] "In other words, the

---

[7]    Defendant overstates the differences between *Dominguez* and the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). In fact, just like the *Marks* court held that a device can be an ATDS if it could (1) produce numbers to be called using a

D.C. Circuit's opinion, endorsed by the Third Circuit, invalidated the FCC's interpretation of 'capacity' in § 227(a)(1), by limiting it to *present*, rather than *potential*, capacity, not the FCC's interpretation of 'using' in § 227(b)(1)(A)(iii), which assumed that a call made be made 'using' an ATDS, even if the ATDS's number-generation feature is not used to make that particular call." *Rivero*, 2019 WL 4784175, at *4.

But in doing so, the Third Circuit did not expressly vacate the FCC's 2003 and 2008 orders, or any portion of them. *See generally Dominguez*, 894 F.3d 116. Nor did the D.C. Circuit vacate the FCC's 2003 or 2008 orders through its *ACA Int'l* opinion. And because the FCC's 2003 and 2008 orders were not appealed, jurisdiction to vacate the 2003 and 2008 orders lapsed long ago—at the end of respective sixty-day timeframes to file an appeal. *See* 28 U.S.C. § 2344.[8]

---

random or sequential number generator, or (2) engage in automatic dialing from a stored list of telephone numbers, *id.* at 1053, the Third Circuit acknowledged that it is unclear how "a number can be *stored* (as opposed to *produced*) using 'a random or sequential number generator." *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 373 n.8 (3d Cir. 2015) (emphasis in original). Also significant, the *Dominguez* decision did not address the human intervention test articulated by the FCC for predictive dialers, so *Marks*'s analysis on this topic does not conflict with *Dominguez*.

[8]    To the extent that Defendant argues differently, the D.C. Circuit's ruling in *ACA Int'l* did not vacate the FCC's 2003 and 2008 orders, or any portion of them. 885 F.3d at 691. Indeed, in *ACA Int'l* the D.C. Circuit set aside only the FCC's 2015 efforts to clarify what equipment constitutes an ATDS: "In this case, a number of regulated entities seek review of a 2015 order in which the [FCC] sought to clarify various aspects of the TCPA's general bar against using automated dialing devices to make uninvited calls. The challenges encompass four issues addressed by the agency's order: (i) which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls; *** We set aside, however, the [FCC's] effort to clarify the types of calling equipment that fall within the TCPA's restrictions." 885 F.3d at 691-92. To be sure, in explaining the standard against which it issued its opinion, the D.C. Circuit took care to narrow the reach of its decision in *ACA Int'l* to the FCC's 2015 order alone: "Under the Administrative Procedure Act, we assess whether the [FCC's] challenged actions in its 2015 order were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' *** Applying those standards to petitioners' four sets of challenges to the [FCC'S] 2015 Declaratory Ruling, we set aside the [FCC's] explanation of which devices qualify as an ATDS[.]" *Id.* at 694-95. The FCC's 2003 and 2008 orders, therefore, remain valid and binding. And many district courts have noted just that. *See, e.g.*, *Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1320 (S.D.

Important, then, is that "the FCC in 2003 issued a Report and Order finding that 'predictive dialers' qualify as 'automatic telephone dialing equipment' under the TCPA." *Somogyi*, 2018 WL 3656158, at *5; *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. at 566, ¶ 12 (2008) ("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," and that "the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention"); *accord Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) ("The FCC has now long recognized that 'predictive dialers,' which have 'the capacity to *store* or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers*,' 2003 FCC Order at 14091, are autodialers under the TCPA.") (emphasis in original); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The FCC further defined 'automatic telephone dialing system' to include predictive dialers."). "Some courts have held that the relevant inquiry in determining whether a 'predictive dialer' qualifies as an ATDS under the TCPA 'is whether human intervention is required at the point in time at which the number is dialed.'" *Somogyi*, 2018 WL 3656158, at *6.

FCC guidance clarifies this position: the human intervention analysis relevant to whether

---

Fla. 2018); *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 587 (M.D. Tenn. 2018); *Maes v. Charter Commc'n*, 345 F. Supp. 3d 1064, 1065 (W.D. Wis. 2018); *Maddox v. CBE Group, Inc.*, No. 1:17-CV-1909-SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018); *Swaney v. Regions Bank*, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018); *Sieleman v. Freedom Mortg. Corp.*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159, at *3, n.4 (D.N.J. Aug. 2, 2018); *Somogyi v. Freedom Mortg. Corp.*, No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4-5 (D.N.J. Aug. 2, 2018); *Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1272 (S.D. Fla. 2018); *Wilson*, 2018 WL 6600096, at *3; *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 489 (E.D.N.Y. 2019); *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 333 (S.D.N.Y. 2019); *but see Marks*, 904 F.3d 1041 (holding that the 2003 and 2008 FCC orders were no longer binding).

a dialer is an ATDS is the human intervention at the point in which the numbers are *dialed*. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. at 14092, ¶ 132 (2003) ("In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention.") (emphasis in original). So, combined with the *Dominguez* decision, this means that "a predictive dialer qualifies as an ATDS so long as it has 'the present *capacity* to dial numbers without human intervention.'" *Wilson*, 2018 WL 6600096, at *3 (emphasis in original).

With this in mind, Plaintiff more than sufficiently pleads facts showing that Defendant placed text messages to her cellular telephone without human intervention, although the degree of human intervention—inherently required to operate any dialer—will surely be a subject of future discovery. In any event, Plaintiff's allegations plausibly assert that Defendant used an ATDS. And Defendant's recitation of the *Dominguez* decision does not compel a contrary result, and certainly does not establish that a plaintiff's claims fail if she does not plead specifically how the dialer at issue has the present capacity to randomly or sequentially generate numbers.

### 3. Defendant's cited CallFire-related cases are inapposite, and ascertaining their relevance is impossible at this early stage.

Briefly setting aside whether Plaintiff is required to know the specific workings of Defendant's dialer—she is not—and ignoring that Plaintiff has been afforded no opportunity to examine the nature of Defendant's dialer—including whether the dialer Defendant actually used is the EZ Texting platform, as opposed to some other service—Defendant's CallFire-related cases fundamentally fail to support its request that this Court dismiss Plaintiff's claims.

First, Defendant cites two *summary judgment* decisions from outside of this Circuit which

held that the CallFire EZ Texting platform is not an ATDS following a developed record into the platform's functionality. *See Ramos*, 334 F. Supp. 3d 1266; *Duran*, 369 F. Supp. 3d 476. Here, Plaintiff does not allege—and Defendant has not explicitly argued, even through its attempt to introduce extrinsic evidence—that Defendant used CallFire's EZ Texting platform.

Further, each of these decisions cite to the human intervention test articulated by the FCC. *Ramos,* 334 F. Supp. at 1273 ("Accordingly, the undersigned concludes that the definition of an ATDS, as interpreted by the FCC's 2003, 2008, and 2012 Orders 'covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.'"); *Duran*, 369 F. Supp. 3d at 489 ("[E]quipment can meet the definition of an autodialer if it pulls from a list of numbers, so long as the equipment also has the capacity to dial those numbers without human intervention.").

However, neither decision ultimately focuses on the "dialing" requirement in the "human intervention" test, instead addressing many other aspects of human intervention, such as "physically inputting numbers, drafting a message, selecting recipients, choosing a date and time to send the message, and manually hitting a 'send' button," in *Ramos*, 334 F. Supp. 3d at 1275, or "whether the user (not the software) determines the time at which the numbers are dialed," in *Duran*. 369 F. Supp. 3d at 490.

In doing so, these decisions simply do not account for the reality that any dialing system requires similar human intervention to configure and set up, as no dialer exists that can operate entirely autonomously. *See Marks*, 904 F.3d at 1052-53 ("Common sense indicates that human intervention of some sort is required before an autodialer can begin making calls, whether turning on the machine or initiating its functions."). In other words, someone always has to turn the system

18

on, set parameters to a campaign and activate it, and curate the message delivered by that campaign. Significantly, the functionality of the EZ Texting system described in *Ramos* and *Duran*—which, again, the parties have not even established Defendant used here—appears to closely resemble the functionality of a predictive dialer, which both the FCC and courts within this circuit acknowledge may qualify as an ATDS. *See Rivero*, 2019 WL 4784175, at *5 n.6 (acknowledging a split in authority following *Dominguez* over whether a predictive dialer "that makes phone calls using a database of stored phone numbers without a human manually dialing each number, can qualify as ATDS, even if the device lacks the capacity to call randomly or sequentially generated numbers").

More specifically, in a predictive dialing system, once a human operator decides to initiate a call campaign, the dialing system moves through a list of telephone numbers, triggered by the availability of call center operators, so human operators act as intermediaries that trigger dialing functions.[9] The EZ Texting text message campaigns, as described in *Ramos* and *Duran*, does the same, except all of the telephone numbers in those campaigns are called—or texted—*at the same time*, without requiring human intermediaries to determine the pace of message delivery. So, if anything, the EZ Texting system is even more automatic, and uses even less human intervention, than a conventional predictive dialer. And, to the extent that discovery reveals that Defendant used the same dialer as the one described in *Ramos* and *Duran*, Plaintiff is entitled to explore the contours of this automation, and the parties may appropriately address this argument at the summary judgment stage, as those parties did.

---

[9]    The FCC's 2003 order describes a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists . . . in predicting when [an] agent will be available to take calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at 14091, ¶ 131 (2003)

Lastly, Defendant cites *one* case that ruled in favor of a defendant at the pleading stage, *DeCapua*, 2019 U.S. Dist. LEXIS 168061, at *6. Relevant, however, is that the *DeCapua* decision was a magistrate judge's report and recommendation, that has since been objected to, and the district court has not adopted that decision. *See generally id.* at D.I. 31, 32, 34 (the parties' briefing of the magistrate judge's decision). Regardless of the nascent stage of the *DeCapua* proceedings, the decision is readily distinguishable, as it was based on a different set of factual allegations which specifically lay out the precise operation of the defendant's dialer. *See* Ex. A; *cf. supra* Argument § II.A (collecting cases denying motions to dismiss involving CallFire). Also significant, the *DeCapua* plaintiff alleged that he received text messages from a short-code specifically registered to the EZ Texting system—313131—but the short-code used by Defendant—797979—is not registered by EZ Texting, and instead is registered by CallFire. *Compare* Ex. A at ¶ 39 *with* D.I. 1 at ¶ 11. Thus, the relevance of *DeCapua*, *Ramos*, and *Duran* remains unclear.

In summary, Defendant cites three different cases that have analyzed CallFire's EZ Texting platform—two at summary judgment, one an unadopted magistrate judge's report and recommendation—even though (1) Defendant has not offered any evidence that it used CallFire's EZ Texting platform to send the text messages at issue; and (2) Plaintiff has not been afforded the opportunity to examine the functionality and use of Defendant's dialer. As a result, Defendant's reliance on the CallFire-related cases is misplaced.

### Conclusion

Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety.

Dated: November 22, 2019

Respectfully submitted,

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
Cooch and Taylor
1007 N. Orange St., Suite 1120
Wilmington, DE 19801

Counsel for Plaintiff and the proposed class