

**Blake A. Bennett**
**Director**
302.984.3889
bbennett@coochtaylor.com

November 22, 2019

The Honorable Leonard P. Stark
United States District Court
for the District of Delaware
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

> RE: *Davis v. D.R. Horton, Inc.,* Civil Action No. 1:19-cv-01686-LPS
> *Plaintiff's Response to Defendant's Motion to Strike Class Action Allegations*

Dear Chief Judge Stark:

Lauren Davis ("Plaintiff") submits the following in opposition to D.R. Horton, Inc.'s ("Defendant") motion to strike Plaintiff's class action allegations, found at ECF Nos. 11-12.

### 1. Striking class allegations here would be an extraordinary and premature remedy.

"While the Third Circuit Court of Appeals has not yet directly addressed this issue, district courts in the Third Circuit typically deny as premature motions to strike class action allegations filed before the plaintiff moves for class certification." *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 2:11-CV-04027, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011) (collecting cases).[1] "Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the 'rigorous analysis' inherent in the class certification decision." *Id.* at *4; *see also Feldman v. Mercedes-Benz USA, LLC*, No. 2:11-CV-00984 WJM, 2012 WL 6596830, at *13 (D.N.J. Dec. 18, 2012) ("[N]umerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature.").

### 2. The proposed class is not impermissibly fail-safe.

Plaintiff's proposed class definition reads: "All persons throughout the United States (1) to whom [Defendant] delivered, or caused to be delivered, an advertisement or telemarketing text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within [the class period]." ECF No. 1 at 8, ¶ 29. Against this backdrop, Defendant moves to strike Plaintiff's class allegations based on its erroneous contention that the proposed class definition is "impermissibly fail-safe." More specifically, Defendant takes issue with the class definition's inclusion of the terms "automatic telephone dialing system" ("ATDS") and "advertisement or telemarketing text message." *See, e.g.*, ECF No. 12 at 2. Defendant's concern, however, lacks merit.

---

[1] Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

### 3. The term ATDS does not make the proposed class definition fail-safe.

Defendant's contention that the term ATDS renders the proposed class definition impermissibly fail-safe is wrong, and has been routinely rejected by courts across the country. For example, in *Olney v. Job.com, Inc.*—an opinion that Defendant cites—the court addressed the defendant's challenge to a proposed class definition that includes the following elements: "calls . . . made through the use of any automatic telephone dialing system" and "without prior express consent." No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013). After the court initially identified problems with the class definition's reference to a lack of prior express consent, the plaintiff proposed a revised class definition: "All persons within the United States who received any telephone calls from Defendant . . . to said person's cellular telephone made *through the use of any automatic telephone dialing system . . . .*" *Id.* Then, in analyzing the amended definition, the court held that *"[t]here is no longer any language in this class definition that could even arguably cause a 'failsafe' problem." Id.*

Other courts have similarly upheld challenges to alleged fail-safe class definitions that include the term ATDS. *See, e.g., Johnson v. Ally Fin. Inc.*, No. 1:16-CV-1100, 2017 WL 3433689, at *1, *4 (M.D. Pa. Aug. 10, 2017) (denying a motion to strike a class definition that "consists of all persons in the United States who received a call . . . *with the aid of an automatic telephone dialing system*," and refusing to accept that the class definition was fail-safe); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *9 (D.N.M. June 5, 2018) (certifying class of those who were called "on their cellular telephones . . . *with an automatic telephone dialing system . . . ,*" and rejecting a contention that the class was "an improper 'fail-safe' class").

Separately, courts have certified, over defendants' objections, TCPA classes defined to include the term ATDS. *See, e.g., West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 307 (N.D. Cal. 2017) (certifying a class defined as persons to who "Defendant . . . made . . . calls . . . *through the use of any automatic telephone dialing system . . . ."); Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 502 (S.D. Ind. 2016) (certifying a class defined as persons to who "Navient Solutions Inc. placed . . . calls . . . directed to a number assigned to a cellular telephone service, (3) *by using an automatic telephone dialing system . . . ."); Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 312 (S.D. Cal. 2015) (certifying a class defined as persons "who had or have a number assigned to a cellular telephone service, who received at least two calls *using an automated dialing system . . . ."); Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145-L NLS, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) (certifying a class of "[a]ll persons . . . who received any telephone call from Defendant . . . *through the use of any automatic telephone dialing system . . ."); accord Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577-MRH, 2016 WL 6916734, at *2 (W.D. Pa. July 14, 2016) (certifying a settlement class defined as: "All persons . . . called . . . *using an automatic telephone dialing system*[.]").

### 4. The terms "advertising" and "telemarketing" do not make the proposed class definition fail-safe.

Defendant submits no authority to support its conclusion that the terms "advertising" or "telemarketing" in the proposed class definition render the class fail-safe. Rather, Defendant meekly notes that "whether a message qualifies as an 'advertisement' or 'telemarketing' is often

the subject of fierce debate, probing analysis, and conflicting (i.e., 'subjective') opinions." ECF No. 12 at 2. Defendant then identifies a series of cases where there existed debate over whether the content of the subject text messages was, in fact, advertisement or telemarketing-related. *See id.* at 2 n.3.

Significant, then, is that the content of Defendant's text messages at issue is not subject to "fierce debate." To be sure, through its messages Defendant repeatedly announced a "Sale-A-Bration," with special prices and incentives to induce purchases, and featured a website link providing inventory for sale. *See* ECF No. 12-1 at ¶¶ 8-10. In other words, Defendant's messages offered a list of products, with special incentive prices, and titled them as a "sale." As such, any argument that fierce debate about the nature of Defendant's messages will ensue is tenuous, at best. And this is especially true given the definitions of "advertisement" and "telemarketing" incorporated in the TCPA. *See* 47 C.F.R. § 64.1200(f)(1) (defining "advertisement"); 47 C.F.R. § 64.1200(f)(12) (defining "telemarketing").

But more importantly, Defendant does not identify any decisions—and Plaintiff is not aware of any—that find a class definition that includes the terms "advertisement" or "telemarketing" is impermissibly fail-safe. Quite contrary, several opinions indicate the opposite. *See, e.g.*, *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) (declining to strike class allegations referencing "*telemarketing calls*"); *G.M. Sign, Inc. v. Grp. C Commc'ns, Inc.*, No. 08-CV-4521, 2010 WL 744262, at *6 (N.D. Ill. Feb. 25, 2010) (certifying a class defined to include persons who "had not previously consented to receiving . . . *advertisements*"); *Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031, at *4 (S.D. Cal. Nov. 8, 2013) (certifying a class defined as: "All persons . . . who were sent one or more unauthorized *text message advertisements* on behalf of Defendant").

Of note, even in instances where TCPA class definitions—which include the terms "advertisement" or "telemarketing"—were deemed impermissibly fail-safe, these terms were not at issue. For example, in *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, the court examined a challenge to the following class definition: "All persons who. . . . were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, and . . . which Defendants did not have prior express permission or invitation, or . . . which did not display a proper opt-out notice." 235 F. Supp. 3d 882, 891 (S.D. Ohio 2017). The court then ruled that the latter two elements of the class—the absence of consent and the failure to display a proper opt-out notice—"would constitute an improper fail-safe class in any attempt to certify." *Id.* No mention was made of the "advertising" language, which Defendant takes issue with here. *See id.*; *see also Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4698665, at *1 (N.D. Ill. Sept. 8, 2016) (same, involving the term "telemarketing," and declining to strike class allegations).

5. **Even if—for the sake of argument—the proposed class definition could be considered "fail-safe," striking class allegations is not a proper remedy, and Plaintiff should be permitted to amend her definition as discovery progresses.**

It is appropriate to modify a class definition to provide precision, or in response to the progression of the case through discovery. *See In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-00984-T-27EA, 2014 WL 1338605, at *15 (M.D. Fla. Apr. 3, 2014); *see also Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly

modify class definitions."); *Fisher v. Ciba Spec. Chem. Corp.*, 238 F.R.D. 273, 300 (S.D. Ala. 2006) (highlighting discretion to modify class definitions). And considering that no discovery has taken place in this matter, it is quite likely that Plaintiff will modify her proposed class definition when she formally seeks to certify a class.

This is, in part, because it is "virtually impossible [at the pleading stage], absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used" to place the calls alleged to be in violation of the TCPA. *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012). And this is why a simple allegation that a defendant used an ATDS is sufficient at the pleading stage. *See In re Jiffy Lube Intern., Inc., Text Spam Litigation*, 847 F. Supp. 2d 1253, 1260 (C.D. Cal. 2012).

Discovery in a TCPA matter, however, naturally sheds light on the specific equipment that a defendant used to send the text messages at issue. Given as much, Plaintiff, here, will almost certainly modify her proposed class definition to reference the precise dialing equipment in question—as opposed to simply referencing the term ATDS—when the details of Defendant's equipment become known. This, then, will undercut any possible argument that Plaintiff's proposed class definition restricts class members to persons having a claim. Because, of course, should this Court certify a class that references the specific dialing equipment at issue, and should this Court later find that the dialing equipment at issue does not constitute an ATDS in a legal (as opposed to a factual) sense, class members could lose on the merits and remain in the class. Thus, the problem resulting from a fail-safe class will not exist. *See* 1 Steven S. Gensler, Federal Rules Of Civil Procedure: Rules and Commentary 522 (2016 ed.). ("A fail-safe class is improper because it shields the class members from the risk of an adverse judgment: either the class members win or they are not in the class and therefore not bound by the judgment.").

Considering all of this, it is not surprising that courts typically decline to "strike class action allegations early in the litigation life cycle" because "unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the 'rigorous analysis' inherent in the class certification decision." *P.V. ex rel. Valentin*, 2011 WL 5127850, at *3. Equally unremarkable is that "[i]n this circuit, 'class allegations are stricken prior to a motion for certification only when class certification is a clear impossibility.'" *Dieter v. Aldi, Inc.*, No. CV 2:18-00846, 2018 WL 6191586, at *6 (W.D. Pa. Nov. 28, 2018). Importantly, Defendant does not, and indeed cannot, argue at this stage that certification here is an impossibility. *Accord Pinero v. Jackson Hewitt Tax Serv. Inc.*, 638 F. Supp. 2d 632, 641 (E.D. La. 2009) ("Defendants have yet to answer plaintiff's complaint and have moved to stay discovery . . . . The Court simply does not have enough evidence with which to ascertain whether plaintiff's class claims are appropriate.").

6. **The proposed class definition is defined with reference to objective criteria.**

Although Defendant vaguely suggests that the proposed class is not defined with reference to objective criteria, it never explains how or why this is so. And Defendant's failure to do so is not surprising as the proposed class definition is certainly not defined by way of subjective criteria. That is, the proposed class definition does not, for example, include language such as "persons frustrated by Defendant's autodialed calls." *Accord Whitaker*, 2014 WL 5454398, at *4 (certifying a class of "[a]ll persons . . . who received any telephone call from Defendant . . . through the use of any automatic telephone dialing system . . . ," and noting that

the "proposed class definition is found to be adequately defined and sufficiently ascertainable because it provides the objective criteria needed to determine the members of the class."); *Olney*, WL 5476813, at *11 (analyzing a class defined as persons "who received any telephone calls from Defendant . . . made through the use of any automatic telephone dialing system," and explaining that "membership in this class can be readily determined by objective criteria").

Also of note, to the extent that Defendant "objective criteria"-related concern is actually one sounding in ascertainability—which it appears to be, *see* ECF No. 12 at 2—Defendant is free to raise such an argument at the appropriate time, which is in response to Plaintiff's motion to certify a class following the completion of discovery.

### 7. This Court should not strike Plaintiff's request for injunctive relief.

Defendant interprets Plaintiff's request for injunctive relief—such as a permanent injunction against Defendant delivering advertising or telemarketing text messages without prior express written consent—as a desire to certify a Rule 23(b)(2) injunctive relief class. As Plaintiff indicated through her complaint, however, she intends to seek certification under Rule 23(b)(3).

Regardless, "[d]istrict courts may certify both a 23(b)(2) class for the portion of the case concerning injunctive and declaratory relief and a 23(b)(3) class for the portion of the case requesting monetary damages." *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764, at *10 (N.D. Cal. Sept. 6, 2017); *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 234 (C.D. Cal. 2018) (same). And by preserving the availability of both Rule 23(b)(2) and 23(b)(3) classes, "[i]n the event that plaintiffs are able to demonstrate liability under the TCPA, but ultimately fail to establish classwide damages, the Court may still enter an injunction against defendant." *McMillion*, 2017 WL 3895764, at *10. This does not mean, however, that Plaintiff will later attempt to avoid the predominance requirements of Rule 23(b)(3) by seeking certification of a damages class within the contours of Rule 23(b)(2).

No matter, since Plaintiff does not explicitly request certification under Rule 23(b)(2), and instead seeks injunctive relief in concert with her request for statutory damages, and because Defendant has not presented any basis for striking Plaintiff's request for injunctive relief, this Court should deny Defendant's motion to strike on this basis.

### 8. The Court should not strike Plaintiff's citation to *Marks*.

Lastly, Defendant briefly argues that Plaintiff's citation to *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), is improper and that this Court should strike it from the complaint because it conflicts with *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (2018). But under Rule 12(f), a court may strike an allegation only if it is scandalous, impertinent, redundant, or immaterial. And as Plaintiff explains in greater detail through her opposition to Defendant's motion to dismiss, ECF No. 14, Plaintiff's reference to *Marks* is none of the above.

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's motion.

                                                         Respectfully submitted,
                                                         */s/ Blake A. Bennett*
                                                         Blake A. Bennett (#5133)

cc: Alessandra Glorioso, Esquire