# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAUREN DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1686-MN-JLH |
| | ) | |
| D.R. HORTON INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

As announced at the hearing on March 12, 2020, I recommend DENYING D.R. Horton's Motion to Dismiss for Failure to State a Claim (D.I. 8) and its Motion to Strike Portions of Plaintiff's Complaint (D.I. 11).

My Report and Recommendation regarding the pending motions was announced from the bench at the conclusion of the hearing as follows:

> . . . This is a case brought under the Telephone Consumer Protection Act, or TCPA, 47 [U.S.C. §] 227. Plaintiff's complaint alleges that defendant, D.R. Horton, violated the TCPA when it sent three unwanted text messages to plaintiff's cellphone. Plaintiff's complaint also contains class action allegations.
>
> Pending before the Court are two motions filed by D.R. Horton. First, in [D.I. 8], D.R. Horton moves to dismiss the complaint under Rule 12(b)(6) for failure to state a claim under the TCPA. For the reasons I am about to explain, I recommend that D.R. Horton's motion be denied.
>
> When reviewing a motion under Federal Rule of Civil Procedure 12(b)(6), I must accept well-pleaded factual allegations as true and view those facts in the light most favorable to plaintiff. Chief Judge Stark described this standard in *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575 [(D. Del. 2015)], which I incorporate by reference.[1]

---

[1] That case set forth the following standard:

> Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all allegations of a complaint. *See Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

Plaintiff's complaint alleges that D.R. Horton violated 47 [U.S.C. §] 227(b)(1)(A)(iii), which in relevant part makes it unlawful for any person within the United States to make any call using any automatic telephone dialing system to any telephone number assigned to a cellular telephone service. The parties do not dispute, and the case law confirms, that text messages are calls within the meaning of this section.

The TCPA defines the phrase "automatic telephone dialing system," or ATDS, as equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. [47 U.S.C. § 227(a)(1).]

In *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 [(3d Cir. 2018)], the Third Circuit held that to violate this section, the equipment must have the present capacity to function as an ATDS.

Plaintiff's complaint contains screen shots of the text messages she received set forth at paragraphs 8 through 10. The text messages are impersonal insofar as they do not refer to plaintiff by name. Two text messages discuss defendant's Sale-A-Bration promotion of what appear to be commissions for the sale of homes at DFW West. The third also appears to discuss a promotion on commissions for the sale of homes at DFW West. Those screen shots suggest that the sender used a six-digit short code, 797979, to send the messages. Plaintiff alleges that short codes are often used for advertising and that this type of short code is a vanity short code that is specifically selected by a brand. Plaintiff alleges that this particular short code is associated with a company called CallFire, Inc.

According to paragraphs 16 through 19 of the complaint, CallFire's website advertises that it implements various hosted telephony software and that it provides the most powerful and versatile SMS text messaging platform on the market. According to the complaint, CallFire advertises that text marketing lets you reach thousands instantly.

Plaintiff alleges on information and belief that in light of the nature and character of the text messages she received and in light of the cited information from CallFire's website, that the text messages were sent by an ATDS.

In support of its motion to dismiss, D.R. Horton first argues that the

---

support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

*Gross*, 123 F. Supp. at 579.

complaint fails to specifically allege that the system it employed used a random or sequential number generator and also fails to allege facts supporting an inference that the system used a random or sequential number generator or had the capacity to do so. Plaintiff argues that she alleged sufficient facts to permit a plausible inference that defendant used an ATDS.

After carefully reviewing the complaint and the authorities cited by the parties, I agree with plaintiff. While many courts considering the issue have concluded that a bare allegation that defendants used an ATDS is not enough to proceed past the motion to dismiss stage, courts also recognize that at this stage of the proceedings plaintiffs are unlikely to have knowledge of the inner workings of the system defendants use to make calls or send text messages. On a motion to dismiss, before beginning discovery, a plaintiff will rarely, if ever, know the specific functionality of a system used by a defendant.

The authorities cited by plaintiff show[] that courts allow cases to proceed when the plaintiff pleads some facts supporting an inference that the defendant may have used an ATDS, even when plaintiff is unable to allege exactly how a particular defendant's system worked. For example, in *Zemel v. CSC Holdings, LLC*[, C.A. No. 18-2340, 2018 WL 6242484 (D.N.J. Nov. 29, 2018),] cited in plaintiff's brief, the Court held that allegations containing detail about the content of the messages and the fact that they were sent using a short code [were] sufficient to raise a plausible inference that the defendant used an ATDS. I find that opinion persuasive.

Here, as in *Zemel*, plaintiff alleges that she received impersonal text messages and that they were sent using a vanity short code. Plaintiff further alleges that, upon and information and belief, defendant used an ATDS. That is enough to proceed at this stage of the litigation.

I also note that my conclusion is in accordance with another case cited by plaintiff, [*Metten v. Town Sports International, LLC*, C.A. No. 18-4226, 2019 WL 1299939 (S.D.N.Y. Mar. 21, 2019)], as well as [*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018),] cited by plaintiff on the phone today. The *Metten* court concluded that the plaintiff had alleged enough when she alleged that she received a generic text message from a short code number, that the number was associated with CallFire, and that CallFire utilizes technology that has the capacity to store and dial telephone numbers en masse. Accordingly, I reject D.R. Horton's argument to the extent it is saying that plaintiff failed to plead enough.

D.R. Horton also argues that plaintiff pled too much. According to D.R. Horton, plaintiff's allegation that it used a system provided by CallFire is fatal to its claims. D.R. Horton points to three opinions from district courts that considered whether the CallFire system alleged to be used by defendants in those cases, in fact, met the definition of an ATDS. Those cases are not dispositive of the issues before this Court.

Two of the cases, *Ramos* [*v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262 (S.D. Fla. 2018),] and *Duran* [*v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476 (E.D.N.Y. 2019),] are opinions ruling on motions for summary judgment. With the benefit of discovery on the system's functionality, those courts were adequately informed to decide that in the context of those cases, the defendants' use of a system provided by CallFire did not fall within the definition of an ATDS. This case, in contrast, is at the pleading stage. There has been no discovery. At this point the record is not sufficiently developed to permit a factual finding that the system used in those cases is the exact same system used in this case, nor does the record at this stage allow me to make a factual finding that the functionality used in those cases is the same as in this case.

D.R. Horton also cites *DeCapua* [*v. Metropolitan Property & Casualty Insurance Company*, C.A. No. 18-590, 2019 U.S. Dist. LEXIS 168061 (D.R.I. Sept. 30, 2019)], which also alleged that the defendant's particular use of a system provided by CallFire violated the TCPA. The Court in that case did dismiss plaintiff's complaint at the pleading stage. However, the plaintiff in that case alleged specific facts about the functioning of the system used by the defendant, and those facts were incapable of meeting the definition of an ATDS under the statute and case law. In other words, the plaintiff in that case pled himself out of court. Here, in contrast, plaintiff's complaint does not contain facts that preclude a determination that the system used by defendant constitutes an ATDS as it is defined by the Third Circuit in *Dominguez*.

In its final argument in support of dismissal, D.R. Horton argues that the CallFire system it used does not, in fact, meet the definition of an ATDS. Recognizing that courts generally do not make factual findings at the motion to dismiss stage, D.R. Horton argues that considering facts on CallFire's website is appropriate here because plaintiff herself cited portions of the website in her complaint.

Defendant is, of course, correct that on a motion to dismiss, courts can consider documents integral to or explicitly relied on in a complaint. For example, courts can consider content set forth in a contract or other document explicitly relied on and can, if the contents aren't in dispute, take as true at the motion to dismiss stage that the document says what it says. The reason for this rule is to prevent the situation in which a plaintiff with a legally deficient claim based on a particular document is able to avoid dismissal of that claim by failing to attach the relied-upon document. But defendant stretches that principle too far here. Even putting aside the fact that websites can be changed, defendant is asking the Court to impose a rule that would not only require the Court to accept that the rest of the website says what it says but also a rule that everything the website says is true. I am aware of no such requirement under the law, and I decline to impose one here.

[*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005),] cited by D.R. Horton is

inapposite because while the Court in that case considered the contents of additional portions of a website at the motion to dismiss stage, the Court only treated as true that they displayed what they displayed. The Court in that case did not hold that it had to accept what was displayed was true.

In short, just because the complaint referred to the CallFire website does not mean that I have to accept as true all statements of the website pertaining to the functioning of CallFire's system. Plaintiff's complaint cites to portions of the CallFire website that suggest that it is plausible that defendant used an ATDS as it is defined in the Third Circuit in *Dominguez*. That there are statements on other portions of the website that would support a contrary finding does not render plaintiff's claim implausible either as a matter of law or in the context of the specific website statements defendant points to here.

If the statements on CallFire's website are true, as D.R. Horton suggests, it may well be right that CallFire's texting system does not qualify under the Third Circuit's definition of an ATDS. But at this stage it is premature to make any factual findings about the operation of CallFire's system.

D.R. Horton also pointed out on the phone today that because the text messages appear to be directed to real estate professionals in the Dallas-Fort Worth area, it is unlikely that plaintiff received the messages as a result of a random or sequential number generator. Even if I agreed with defendant that those facts make it less likely that the defendant used an ATDS, the plausibility standard is not akin to a probability requirement, as the Supreme Court stated in *Iqbal*. Moreover, as the District Court in *Zemel* recognized, just because there is an alternative explanation for a fact alleged in a complaint does not mean that the complaint fails to plausibly state a claim.

Considering the facts alleged by plaintiff in the light most favorable to her, I am not persuaded that her claim that they were generated by a system that had the present capacity to function as an auto dialer, as required by *Dominguez*, is implausible. Accordingly, I recommend that the Court deny D.R. Horton's motion to dismiss for failure to state a claim.

The next motion before the Court is D.R. Horton's motion to strike several portions of Davis' complaint under Rule 12(f) and Rule 23(d)(1)(D). That motion is at [D.I. 11]. For the reasons I am about to explain, I recommend that D.R. Horton's motion to strike be denied.

A party can move under Rule 12(f) to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Additionally, for class action allegations, Rule 23(d)(1)(D) allows a court to require the pleadings to be amended to eliminate allegations about representation of absent persons.

D.R. Horton asks the Court to strike three portions of the complaint: A citation to a Ninth Circuit case, plaintiff's class allegations, and plaintiff's request for injunctive relief.

D.R. Horton first asks the Court to strike the complaint's citation to a Ninth Circuit case that is in conflict with the Third Circuit on whether an ATDS must have the present capacity to generate random or sequential numbers. Of course, the Court does not have to accept as binding a complaint's citation to legal authority, especially when it is in conflict with binding circuit authority, so I am not sure what this gets defendant even if I thought it should be stricken. But I do not recommend striking it. D.R. Horton offers no authority supporting its argument that it is appropriate to strike case citations, and plaintiff will, of course, be free one day to argue to the Supreme Court that the Ninth Circuit and not the Third Circuit is right. While plaintiff is free to continue citing the *Marks* case in future briefing, I do expect that plaintiff will also disclose to the Court legal authority in the controlling jurisdiction that is adverse to its positions.

Second, D.R. Horton moves to strike the class allegations from the complaint. I recommend that the Court deny that request. Procedurally, this matter is in its infancy. Defendant hasn't answered, discovery hasn't started, and no motion for class certification has been filed. District courts, including the ones cited in plaintiff's papers, typically deny as premature motions to strike class allegations filed before the plaintiff moves for class certification.

As Judge Davis from the Eastern District of Pennsylvania recognized in *P.V. v. School District of Philadelphia*, [C.A. No. 11-4027, 2011 WL 5127850 (E.D. Pa. Oct. 31, 2011),] cited by plaintiff, "[c]ourts have good reason to decline to hastily strike class action allegations early in the litigation life cycle. Specifically, unless the parties have completed discovery and at least one party has moved for class certification, a court very rarely has the information necessary to conduct the 'rigorous analysis' inherent in the class certification decision." [*Id.* at *4.]

In addition, the opinion in *Donaca v. Metropolitan Life Insurance Company*, [No. 13-5611, R2014 WL 12597152 (C.D. Cal. 2014)], contains a page-long string cite of opinions, many of them TCPA cases, that have declined to strike class allegations at the motion to dismiss stage. I agree with those cases, and I believe that the motion to strike is premature.

While striking class allegations at this stage is very rare, it is not unheard of, and courts have stricken class allegations in situations where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. D.R. Horton argues that this is one of those rare cases, contending that plaintiff's proposed class is impermissibly fail-safe. D.R. Horton argued on the phone today that the class definition includes only those who received advertising and telemarketing messages from the defendant through the use of an ATDS. And D.R.

6

Horton argues that if discovery shows that it never used an ATDS, then there is no one in the class.

I am not persuaded at this stage of the proceeding that the class allegation should be stricken. As I understand it, the principal concern with fail-safe classes is ascertainability. The ascertainability inquiry requires plaintiffs to demonstrate that the proposed class is defined with reference to objective criteria and that there is a reliable and administratively feasible mechanism to determine whether putative class members fall in the class. Given the nature of the allegations in this case, it is not facially impossible that a class could be certified here, and plaintiff's papers cite a number of cases in which a class was certified, notwithstanding the class definition's reference to an ATDS, advertising, or telemarketing.

If discovery of defendant's business records reveals the identities of the persons to whom the text messages were sent and the contents of those messages, there may be a reliable and administratively feasible mechanism to determine whether they fall in the class. In other words, the worry expressed by the ascertainability inquiry -- namely, that courts would have to make individualized, non-objective inquiries about the merits of prospective individual class members' claims in order to determine class membership -- may not be present here.

Last, D.R. Horton argues that the class allegations should be stricken because by seeking injunctive relief, plaintiff improperly seeks to certify a class under Rule 23(b)(2). In her response plaintiff confirmed that she seeks to proceed under Rule 23(b)(3). As defendant has provided no other argument in support of striking plaintiff's request for injunctive relief, I do not see a current basis to strike it. D.R. Horton is free to re-raise its arguments at the class certification stage.

In conclusion, I recommend that the Court deny in full D.R. Horton's motion to strike.

For the reasons set forth above, I recommend that the Court DENY D.R. Horton's Motion to Dismiss for Failure to State a Claim (D.I. 8) and DENY D.R. Horton's Motion to Strike Portions of Plaintiff's Complaint (D.I. 11).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo*

review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated:	March 16, 2020

Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE